UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| FRANKI MAYER, | ) | CIV. 11-5025-JLV |
| | ) | |
| Plaintiff, | ) | ORDER REVERSING |
| | ) | DECISION OF THE |
| vs. | ) | COMMISSIONER AND |
| | ) | REMANDING FOR |
| MICHAEL J. ASTRUE, | ) | CALCULATION AND |
| Commissioner of Social Security, | ) | AWARD OF BENEFITS |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Franki Mayer filed a complaint appealing from an administrative law judge's (ALJ) decision denying her disability benefits. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 13). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 15). The parties filed their JSMF. (Docket 18). Following briefing the matter is ripe for resolution. For the reasons stated below, plaintiff's motion to reverse the Commissioner's decision (Docket 23) is granted.

**FACTUAL AND PROCEDURAL HISTORY**

The parties JSMF (Docket 18) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order.

The issue before the court is whether Ms. Mayer "is entitled to benefits for the period from November 1, 1997 through December 2, 1999." Id. at ¶ 10. For ease of reference, this application for benefits will be referred to as

"Application #2."[1]  While the denial of Application #1 was on appeal before the court, Ms. Mayer filed Application #2 on May 21, 1998.  Id. at ¶ 2.  Application #2 originally sought benefits from January 1, 1997.  Id.  At the hearing before an ALJ on July 21, 1999, "[Ms.] Mayer amended her onset date to November 1, 1997, one day after the date of the previous . . . decision denying her 1995 application[] [Application #1]."  Id.  On December 2, 1999, the ALJ denied Application #2.  Id. at ¶ 3.  Application #2 was appealed and on October 23, 2003, Chief Judge Karen E. Schreier reversed the ALJ's decision.[2]  Id. at ¶ 5.  Judge Schreier remanded the case to the Commissioner for three reasons.  Id.  First, the hypothetical question did not "precisely describe [Ms.] Mayer's psychological impairments."  Id.  Second, "the ALJ did not properly evaluate treating psychiatrist Dr. Hicks' opinions."  Id.  Third, "new evidence provided to the Appeals Council (treatment notes from Dr. Hicks and a form letter) showed that the ALJ's decision was not supported by substantial evidence."  Id.

Following the First Remand Order, a second ALJ canceled the hearing and dismissed Application #2 in 2006.  Id. at ¶ 7.  This ALJ concluded because

---

[1] Ms. Mayer is currently receiving disability insurance benefits and supplemental security income for psychological conditions with an effective date of December 3, 1999. (Docket 18, ¶¶ 1 & 10) ("Application #3").  Ms. Mayer's first application for benefits in 1995 for the period prior to January 1, 1997, was denied ("Application #1").  Id. at ¶¶ 1 & 2.

[2] This decision by Chief Judge Schreier will be referred to as the "First Remand Order."

Ms. Mayer "alleg[ed] an onset date of December 2, 1999, rather than January 1, 1997," in Application #3, she "had 'explicitly admitted' . . . she was not disabled before December 2, 1999, and that the case was therefore 'moot.'" Id. Ms. Mayer appealed this decision to federal district court. Id. at ¶ 8. "On July 7, 2009, Judge Schreier reversed [the ALJ's] dismissal and remanded for a hearing."[3] Id.

Another ALJ heard Application #2 on its merits and "issued an unfavorable decision on July 22, 2010, finding [Ms.] Mayer was not disabled during the period from January 1, 1997, through December 2, 1999." Id. at ¶ 9. It is this decision which Ms. Mayer now appeals.

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

---

[3]This decision by Chief Judge Schreier will be referred to as the "Second Remand Order."

3

Substantial evidence is evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. Choate, 457 F.3d at 869 (quoting Ellis v.Barnhart, 392 F.3d 988, 993 (8th Cir. 2005)). The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would have decided the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

Important to this court's analysis is the conclusion in the First Remand Order that "the ALJ did not properly evaluate treating psychiatrist Dr. Hicks' opinions." (Docket 18, ¶ 5). That conclusion was based on the court's finding

> Dr. Hicks opined specifically that Mayer was unable to work on November 3, 1997, and also that she would be unable to work for the

4

> indefinite future. . . . Dr. Hicks has treated Mayer for an extended period of time since 1997. He has given opinions regarding Mayer's work restrictions which are consistent with the other substantial evidence in the case and also supported by his treatment notes. . . .

Mayer v. Barnhart, 5:02-cv-5079-KES (D.S.D. October 23, 2003) (Docket 22 at p. 17). Based on those findings, the court ruled "[t]he ALJ's failure to evaluate Dr. Hicks' opinions and to give good reasons for the particular weight given to the treating physician's evaluation is error." Id. This directive was reinforced in the Second Remand Order. "[T]he court found that the 1999 decision [on Application #2] to deny benefits was erroneous as a matter of law and remanded for further proceedings consistent with its order." Mayer v. Astrue, 5:08-cv-5051-KES (D.S.D. July 7, 2009) (Docket 20 at p. 7).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis, prognosis, what [claimant] can still do despite the impairment(s), and . . . physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). In weighing medical opinion evidence, the ALJ must consider the factors set forth in the regulations. 20 C.F.R. § 416.927(d). All medical opinions are to be evaluated by the ALJ according to the same criteria, summarized as follows:

1. Whether the opinion is consistent with other evidence in the record;

2. Whether the opinion is internally consistent;

5

3. Whether the person giving the medical opinion examined the claimant;

4. Whether the person giving the medical opinion treated the claimant;

5. The length of the treating relationship;

6. The frequency of examinations performed;

7. Whether the opinion is supported by relevant evidence, especially medical signs and laboratory findings;

8. The degree to which a non-examining or non-treating physician provides supporting explanations for their opinions and the degree to which these opinions consider all the pertinent evidence about the claim;

9. Whether the opinion is rendered by a specialist about medical issues related to his or her area of specialty; and

10. Whether any other factors exist to support or contradict the opinion.

Waddell v. Astrue, 5:10-5043-JLV (D.S.D. December 7, 2011) (Docket 15 at p. 11) (citing 20 C.F.R. § 416.927(a)-(f); Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007)).

"[A] treating physician's opinion is given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Medhaug v. Astrue, 578 F.3d 805, 815 (8th Cir. 2009) (quoting Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (internal quotation marks omitted). "The length of the treating relationship and the frequency of

examinations of the claimant are also factors to consider when determining the weight to give a treating physician's opinion." Waddell, 5:10-5043-JLV (Docket 15 at p. 12) (citing 20 C.F.R. § 416.927(d)(2)(i)).

The directive from the court in the remand orders was very clear. The ALJ was required to evaluate Dr. Hicks' opinions and give good reasons for the particular weight assigned to his opinions. Of the ALJ's twelve-page decision, only two references were made to Dr. Hicks' care and treatment of Ms. Mayer. Those references were:

1. In a psychiatric evaluation of September 1997, Dr. Terry Hicks, MD, assessed the claimant with a current GAF of 60, with a highest in the last year of 70, which would indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning, and assessed the claimant with a highest GAF in the last year of 70, which would indicate some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

2. Dr. Trontel[4] [sic] noted the opinions of Dr. Hicks, and stated that he felt they were both in general agreement regarding their opinions of the claimant's functioning, noting Dr. Hicks remarked in May 1999 that "it is unlikely that [the claimant] will be awarded [disability] right away, she is capable of some work" . . . which also reflects the opinion of the claimant's mental health counselor.

---

[4]Edward Trontell, Ph.D., is a clinical psychologist retained by the Social Security Administration to do a medical records review in Ms. Mayer's case. See Docket 18, ¶ 34; Administrative Record at pp. 1166 & 1355 ("AR at p. ___").

(AR at p. 1169). In contrast, the parties' JSMF set out in detail Dr. Hicks' care and treatment of Ms. Mayer beginning in September of 1997 and continuing through December 2, 1999, and his professional opinions regarding Application #2. (Docket 18 at ¶¶ 12, 14-18, 23 & 30).

In September of 1997, Dr. Hicks diagnosed Ms. Mayer as suffering from a "bipolar II disorder (most recent episode depressed), cocaine and cannabis dependence in remission, attention deficit hyperactivity disorder, personality disorder, and GAF codes of 60 (current) and 70 (highest). . . . Hicks noted that Mayer met the requirements for 'SPMI [severely and persistently mentally ill] services,' based on her greater than 30 years difficulty with mental disorder symptoms . . . ." Id. at ¶ 12. On November 3, 1997, "Dr. Hicks noted that Mayer reported having difficulties working with the disability system and that he 'signed paperwork, stating that the patient was unable to work at this time and that she would not be able to work for the indefinite future' . . . ." Id. at ¶ 14. Following a suicide threat and Flexeril medication overdose, Ms. Mayer was hospitalized at Rapid City Regional Hospital on November 6, 1997, where she remained until being discharged on November 18. Id. at ¶ 15. Among other medications she received at discharge were "Prozac, Ativan (an anti-anxiety medication), and Desyrel (an antidepressant) . . . ." Id. "During January - September 1998, Dr. Hicks consistently diagnosed her with major depression, recurrent, chronic, severe, without psychotic features . . . ." Id. at ¶ 16.

On May 24, 1999, Dr. Hicks signed off on an annual assessment prepared by another member of Behavior Management Systems which "noted that Mayer did not have an income 'nor has she been able to maintain gainful employment for any extended period of time.'" Id. at ¶ 18. It was in this assessment that "[i]t was noted that Mayer was 'applying for Social Security. It is unlikely that she will be awarded this right away, as she is capable of some work.'" Id. The record reflects Ms. Mayer was attempting to work part-time for a business called "Tellcall," by "doing psychic readings over the phone . . . . [and earning] about $80 a month." Id. at ¶ 24. She "basically took calls when she felt up to it . . . [and had] not worked in any other job since November 1, 1997." Id.

Dr. Hicks completed an assessment for the time period prior to December 2, 1999, in which he opined:

> [Ms.] Mayer had <u>severe restrictions</u> in maintaining attention and concentration for extended periods, being punctual in a work environment, making simple decisions, responding appropriately to changes, and setting realistic goals; and <u>moderate limitations</u> in understanding, remembering, and carrying out simple instructions, sustaining an ordinary routine without special supervision, interacting appropriately with the public, and maintaining socially acceptable behavior . . . .

Id. at ¶ 30 (emphasis added).

9

Dr. Trontell testified Ms. Mayer's records "reflected the presence of an affective disorder[5] and personality disorders."[6] Id. at ¶ 34. Ms. Mayer "suffers from a recurrent Major Depressive Disorder embedded in a personality disorder with dramatizing, manipulative, entitled, and antisocial features . . . ." Id. at 1343. Those personality disorders resulted in

> [i]nflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by at least one of the following: . . . 4. Persistent disturbances of mood or affect . . . 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior.

Id. at 1346. "Dr. Trontell indicated that Mayer had <u>mild limitations</u> in interacting appropriately with the public, supervisors, and co-workers and <u>no limitations</u> in the following areas: understanding, remembering and carrying out simple instructions; making judgments on simple work-related decisions; understanding, remembering and carrying out complex instructions; and making judgments on complex work-related decisions . . . ." (Docket 18, ¶ 34) (emphasis added). "Dr. Trontell testified that she had <u>no limitations</u> on her

---

[5]The affective disorder is "recurrent major depressive disorder." (AR at p. 1347).

[6]A personality disorder is a "general term for a group of behavioral disorders characterized by usually lifelong ingrained maladaptive patterns of subjective internal experience and deviant behavior, lifestyle, and social adjustment, which patterns may manifest in impaired judgement, affect, impulse control and interpersonal functioning." Stedman's Medical Dictionary 116700 (27th ed. 2000).

ability to understand, remember and carry out instructions and had only <u>mild limitations</u> socially . . . ." Id. (emphasis added). "Dr. Trontell stated that Mayer appeared to manage activities of daily living without compromise, had friends and was portrayed as friendly, seemed to work at times, and did not demonstrate 'prolonged loss of adaptive capacity' . . . ." Id. "He testified that there was 'no evidence that there were cognitive limitations or intellectual deficiency that would prevent her from understanding simple and complicated instructions that would be found in most work settings' . . . ." Id. "In terms of her ability to interact with the public, [Dr.] Trontell testified that Mayer had only had <u>mild limitations</u> because 'she has done so in the past and she has been able to keep jobs' . . . ." Id. (emphasis added). Finally, "[Dr.] Trontell felt Mayer had <u>no difficulties</u> in maintaining concentration, persistence or pace . . . ." Id. (emphasis added).

Once again, the ALJ's failure "to evaluate Dr. Hicks' opinions and to give good reasons for the particular weight given to the treating physician's evaluation is error." Mayer, 5:02-cv-5079-KES (Docket 22 at p. 17). Dr. Hicks' medical opinions were to be evaluated by the ALJ in accordance with the criteria established by 20 C.F.R. § 416.927(a)-(f). See Wagner, 499 F.3d at 848. "Dr. Hicks has treated Mayer for an extended period of time since 1997. He has given opinions regarding Mayer's work restrictions which are consistent with the other substantial evidence in the case and also supported by his

11

treatment notes." Mayer, 5:02-cv-5079-KES (Docket 22 at p. 17). "[A] treating physician's opinion is given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Medhaug, 578 F.3d at 815. The ALJ did not "give good reasons for discounting" Dr. Hicks' opinions as Ms. Mayer's treating physician. Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002) (internal quotation marks omitted).

Instead, the ALJ gave "substantial weight" to the opinions of Dr. Trontell. (AR at p. 1170). The ALJ did so without even a passing reference to the controlling weight evaluation which should have been given to Dr. Hicks' opinions. 20 C.F.R. § 416.927(a)-(f); Wagner, 499 F.3d at 848; Medhaug, 578 F.3d at 815. Dr. Trontell's opinions were adopted by the ALJ even though, based on all the evidence in the record before Dr. Trontell's testimony, the court ruled "it appears undisputed that [Ms.] Mayer often had deficiencies of concentration, persistence or pace." Mayer, 5:02-cv-5079-KES (Docket 22 at p. 15).

Dr. Trontell's testimony is also suspect because he testified Ms. Mayer "has been able to keep jobs . . . ." (Docket 18, ¶ 35). Dr. Trontell made that declaration even though "he did not know the duration of those jobs except that there was a reference to a job which lasted for six years when she worked as a truck driver for the same company from 1980 to 1986 . . . ." Id. The

12

undisputed testimony of Ms. Mayer was that she was only earning $80 per month doing psychic readings over the telephone and had not worked any other job since November 1, 1997. (Docket 18, ¶ 24). The Commissioner's own records show Ms. Mayer had "over 50 jobs during the 15-year period from 1982 to 1997." Id. at ¶ 11. This is hardly evidence that Ms. Mayer had the concentration, persistence, or pace to maintain employment. Her record of an inability to maintain employment is part of the justification for the Social Security Administration awarding Ms. Mayer disability benefits beginning as of December 3, 1997, in Application #3.

Dr. Hicks' opinions are contradicted only by Dr. Trontell, who is not a treating psychologist, never examined Ms. Mayer, and performed only a medical records review. The length of Dr. Hicks' treating relationship and the frequency of his examinations of Ms. Mayer are also factors to consider when determining the weight to give a treating physician's opinion. 20 C.F.R. § 416.927(d)(2)(i). Dr. Hicks' opinions are consistent with his own notes and are consistent with the other medical and non-medical sources providing counseling and therapy to Ms. Mayer. 20 C.F.R. § 416.927(a)-(f).

The Commissioner argues the Appeals Council "considered Dr. Hicks' opinions and in so doing complied with the Court's Order of October 23, 2003 [the First Remand Order]." (Docket 27 at p. 5). The Commissioner then argues why the court should consider the opinion of the Appeals Council over the

findings of the ALJ. Id. at pp. 5-9. However, the Appeals Council declined to assume jurisdiction over Ms. Mayer's appeal. (AR at p. 1145). Furthermore, the Commissioner admitted in his answer "that the Appeals Council's February 23, 2011 action denying plaintiff's request for review of the hearing decision thereby rendered the [ALJ's] July 22, 2010 decision the 'final decision' of the Commissioner subject to judicial review pursuant to . . . the Social Security Act, 42 U.S.C. § 405(g)." (Docket 13, ¶ 3).

"As a rule, '[a]dmissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended.' " Missouri Housing Development Commission v. Brice, 919 F.2d 1306, 1314 (8th Cir. 1990) (citing Scott v. Commissioner, 117 F.2d 36, 40 (8th Cir. 1941)). "[J]udicial admissions are binding for the purpose of the case in which the admissions are made including appeals." State Farm Mutual Automobile Insurance Co. v. Worthington, 405 F.2d 683, 686 (8th Cir. 1968). The ALJ's decision of July 22, 2010, is the final decision of the Commissioner. 20 C.F.R. §§ 404.984(a) & (b)(2).

The review of an ALJ decision is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed, 399 F.3d at 920 (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

14

The ALJ erred, both factually and as a matter of law, when he chose to give substantial weight to the opinions of Dr. Trontell. The Commissioner's findings on this issue are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate, 457 F.3d at 869. Dr. Hicks' opinions are entitled to controlling weight. Medhaug, 578 F.3d at 815.

The court may affirm, modify, or reverse the Commissioner's decision, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 409(g). If the court determines that the "record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which the plaintiff is entitled, reversal is appropriate." Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992). Remand to the Commissioner for a third time is neither necessary nor appropriate in this case. Application #2 has been pending since 1998 and the Commissioner's own final witness resolves this case in favor of Ms. Mayer.

William Tysdal, a vocation expert, testified at the June 2010 hearing on Ms. Mayer's claim for benefits under Application #2. (Docket 18, ¶ 37). Mr. Tysdal concluded if the limitations reported by Dr. Hicks are applied, that individual could not perform any jobs. Id. That is, "an individual who was the same age as Mayer with the same education and work experience . . . who had severe limitations on the ability to maintain attention and concentration for extended periods, remain punctual in a work environment, make simple work related decisions, respond appropriately to changes in work settings and had other severe limitations" would be unemployable. Id. These extreme

15

psychological limitations, by the testimony of Mr. Tysdal, preclude Ms. Mayer from working in any job. Ms. Mayer is disabled and entitled to benefits.

## CONCLUSION

After fourteen years in the adjudication and appeals process, it is clear to this court that a remand would simply delay Ms. Mayer's right to receive benefits to which she is entitled. Therefore, reversal is the appropriate remedy at this juncture. Thompson, supra. In accord with the above decision, it is hereby

ORDERED that plaintiff's motion (Docket 23) is granted and the decision of the Commissioner of July 22, 2010, is reversed and the case is remanded to the Commissioner for the purpose of calculating and awarding benefits to the plaintiff Franki Mayer for the time period from November 1, 1997, through December 2, 1999, under the Act.

IT IS FURTHER ORDERED that defendant's motion to affirm the decision of the commissioner (Docket 26) is denied.

IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment in favor of the plaintiff Franki Mayer and against defendant Michael J. Astrue, Commissioner of the Social Security Administration.

Dated September 25, 2012.

BY THE COURT:

*/s/ Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE